## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MAUD LEE, ARRICK JACKSON, and TREMAYNE WILLIAMS, individually and on behalf of others similarly situated, | |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | JURY DEMANDED |
| AAA FREIGHT INC. and DEKI TRANSPORT, INC. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Maud Lee, Arrick Jackson, and Tremayne Williams bring this case individually and on behalf of others similarly situated against Defendants AAA Freight Inc. ("AAA Freight") and Deki Transport, Inc. ("Deki Transport") for breach of contract and violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2). Plaintiffs bring their claims as a putative class action.

## NATURE OF THE CASE

1.     Defendants engaged in a widespread scheme to violate their lease agreements with owner-operators in order to steal part of owner-operators' compensation.

2.     Defendant AAA Freight is a federally licensed motor carrier that enters into contracts ("Lease Agreements") with owner-operators to use their semi-trucks, with or without a driver, to transport goods under their motor carrier license. AAA Freight paid Plaintiffs through Deki Transport, Inc., an Indiana corporation that is not a federally licensed motor carrier. Plaintiffs and other drivers worked for Defendants as owner-operators.

3.      Defendants acted as alter egos with regard to the misconduct described herein.

## Parties

4.      Plaintiff Maud Lee, an Ohio resident, is an interstate truck driver. She has a CDL Class A license and worked for Defendants as an owner-operator from April to July 2022. During all times that Lee worked for Defendants, she was not an agent of Defendants for the purposes of the TILA.

5.      Plaintiff Arrick Jackson, a Georgia resident, is an interstate truck driver. He has a CDL Class A license and worked for Defendants as an owner-operator from approximately April to July 2022. During all times that Jackson worked for Defendants, he was not an agent of Defendants for the purposes of the TILA.

6.      Plaintiff Tremayne Williams, an Ohio resident, is an interstate truck driver. He has a CDL Class A license and worked for Defendants as an owner-operator from approximately April to June 2022. During all times that Williams worked for Defendants, he was not an agent of Defendants for the purposes of the TILA.

7.      Defendant AAA Freight Inc. is an Illinois business corporation with principal place of business in South Holland, Illinois. AAA Freight is a federally regulated motor carrier providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

8.      AAA Freight employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, AAA Freight leases equipment from other related entities or owner-operators.

9.      AAA Freight is registered under MC-740661, US DOT # 2028041. According to the SAFER – FMCSA management information systems, AAA Freight reported that it operates

2

353 power units (semi-trucks) and 505 drivers. Further, AAA Freight reported that it ran approximately 43 million miles so far in 2022.

10.     Deki Transport, Inc. is an Indiana business corporation with its principal place of business in Hammond, Indiana.

## Jurisdiction and Venue

11.     The Court has subject matter jurisdiction over this action pursuant to the TILA, 49 U.S.C. § 14704 and 28 U.S.C. § 1331.

12.     Venue is proper in this jurisdiction under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events and omissions giving rise to this action occurred in the Northern District of Illinois.

## TILA Legal Standards

13.     TILA and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally authorized motor carriers that transport freight in interstate commerce. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12. TILA regulations require the motor carrier's equipment leases to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any escrow withholdings and charge back items. *Id*. at § 376.12 (h), (k). When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation actually used for a shipment containing the same information, before or at the time of settlement. *Id*. at 376.12(g). Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id*. § 376.12 (introductory paragraph).

**Common Facts**

14. Plaintiffs leased semi-trucks from AAA Equipment LLC, Defendants' affiliate leasing company. Plaintiffs then drove the semi-trucks they leased from AAA Equipment LLC to transport loads as "owner-operators" under Defendant AAA Freight's carrier license.

15. Plaintiffs had exclusive use of the semi-trucks they leased from AAA Equipment LLC during their contractual relationships with Defendants.

16. Plaintiffs' equipment leases with AAA Equipment LLC provided that Plaintiffs would "initially use the equipment under an ICOA with Deki Transport, Inc. ("Carrier")." Exhibit A, Arrick Jackson Equipment Lease, at Schedule A. However, Deki Transport, Inc. is not listed on the FMCSA Safer database as a federally authorized carrier.

17. Notwithstanding the reference to Deki Transport, Inc., the trucks that Plaintiffs leased from AAA Equipment LLC displayed AAA Freight's carrier tags, MC number, and US DOT number. Plaintiffs dealt directly with AAA Freight to carry out the terms of their agreements with Defendants.

18. Employees or agents for AAA Freight offered Plaintiffs loads and gave them the information they needed to pick up and deliver loads, either by text message or through emailed dispatch sheets. *See* Exhibit B, Email from AAA Freight to Tremayne Williams attaching dispatch sheet.

19. The TILA requires federally authorized carriers who contract with owner-operators to enter into written leases that meet certain requirements. 49 C.F.R. §§ 376.11(a), 376.12. However, AAA Freight did not execute a written contract, or lease agreement, with Plaintiffs. Instead, Defendants made a verbal agreement to pay Plaintiffs 80% of the price of the gross receipts they hauled for Defendants.

20.     Deki Transport, Inc. issued Plaintiffs' settlement sheets (pay statements). The settlement sheets memorialized that Defendants agreed to pay Plaintiffs 80% of the load rates. *See* Exhibit C, Maud Lee Settlement Statement.

21.     Despite violating the TILA's written lease requirement, Defendants' verbal agreement to pay Plaintiffs 80% of all gross receipts for the loads they hauled constituted "leases" for the purposes of the TILA. 49 C.F.R. § 376.2(e). *See Bonkowski v. Z Transport, Inc*., No. 00 C 5396, 2004 WL 524723 (N.D. Ill. Mar. 5, 2004).

22.     TILA regulations required Defendants to make certain disclosures to Plaintiffs regarding their compensation and deductions from their pay. 49 C.F.R. § 376.12. Specifically, Defendants were required to provide Plaintiffs with the original brokers' rate confirmation sheets for each load they hauled. *Id.* at § 376.12(g).

23.     Defendants refused to provide Plaintiffs with copies of the original brokers' load confirmation sheets. Instead, AAA Freight communicated the price of the loads to Plaintiffs via text messages or by email using their own dispatch sheets.

24.     Plaintiffs could not verify that the AAA Freight accurately communicated the load prices to them because Defendants refused to provide the required load confirmation sheets.

25.     AAA Freight also lied and under-reported the price of Plaintiffs' loads to Plaintiffs, and then Defendants paid Plaintiffs their allotted percentage of the lower, underreported amount, in violation of their agreements with Plaintiffs.

26.     Defendants directly pocketed the portion of gross receipts they concealed from each driver and paid drivers' their promised portion of the lower, underreported amount.

27.     On at least two occasions, Plaintiff Lee directly contacted the third-party broker responsible for booking a load she hauled for AAA Freight. On each occasion, the broker told

Lee that the shipper was paying AAA Freight a higher price for the load than AAA Freight had reported to Lee.

28.     On at least one occasion, the third-party broker informed Plaintiff Williams that the price AAA Freight reported to Williams was 20% less than the actual price the shipper was paying AAA Freight. After Williams delivered the load, AAA Freight paid Williams 80% of the lower, underreported price.

29.     On at least one occasion, a third-party broker informed Plaintiff Jackson that AAA Freight was under-reporting the load price to Jackson.

30.     Defendants violated the TILA rules by not adhering to the terms of their lease agreements with Plaintiffs. 49 C.F.R. § 376.12 (intro paragraph).

31.     During the past five years alone, Defendants have collectively contracted with hundreds, if not thousands, of lessors/owner-operators to provide transportation service for its clients.

32.     On information and belief, Defendants entered substantively identical lease agreements with hundreds, if not thousands, of drivers promising to pay them 80% of the load price.

33.     During the weeks that Plaintiffs worked for the company, Defendants deducted significant amounts from Plaintiffs' wages or final compensation without providing the notice required by the TILA. *Id*. § 376.12(h), (k).

34.     Defendants deducted money from Plaintiffs' compensation for a so-called escrow account.

35. Defendants did not disclose in writing the escrow and chargeback items they deducted from Plaintiffs' settlements, including but not limited to insurance and maintenance accounts.

36. As a result of Defendants' failure to disclose escrow and chargeback items, Plaintiffs were unable to determine the validity of Defendants' escrow withholdings and chargebacks.

37. Defendants did not pay interest on Plaintiffs' escrow accounts or return the escrow to Plaintiffs when they terminated their contractual relationships with Defendants.

38. Defendants withheld Plaintiffs' last settlements (payments) when Plaintiffs terminated their contracts with Defendants.

**Class Allegations**

39. Plaintiffs bring this action on behalf of themselves and the following classes of similarly situated individuals or entities, defined as:

> All individuals or entities that contracted with Defendants as lessors/owner operators from October 14, 2012 to the present and were paid based on a percentage of the load rate.

40. The Class defined above satisfies the requirements of Rules 23(a) and 23(g).

    a. **Numerosity.** The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Since 2012, Defendants have contracted with more than 500 owner-operator drivers.

    b. **Commonality.** Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the Class include, among others, the following:

7

      i.    Whether Defendants breached the terms of their agreements with owner-operator drivers by paying them less than the promised percentage of gross receipts on each load;

     ii.    Whether Defendants paid interest on the escrow accounts they deducted from owner-operators' settlements;

    iii.    Whether Defendants refused to return drivers' escrow and maintenance accounts without justification;

    iv.    Whether Defendants withheld drivers' final settlements upon termination of drivers' contracts;

     v.    Whether Defendants made deductions and chargebacks from owner-operators' pay without disclosing them in written agreements with the owner-operators.

c.   **Typicality**. Plaintiffs' claims are typical of the Class's claims because Plaintiffs and all Class members were injured through Defendants' uniform misconduct. The claims of Plaintiffs and the Class arise from the same operative facts and are based upon the same legal theories. There are no defenses unique to Plaintiffs.

d.   **Adequacy.** Plaintiffs will fairly and adequately protect and represent the interests the Class because (i) Plaintiffs have retained competent and experienced counsel that have the time, experience, and resources to litigate this case; (ii) Plaintiffs are members of the Class, their claims are typical of the Class, and they have suffered substantially similar injuries to those suffered by the rest of the Class; (iii) Plaintiffs' interest in obtaining monetary relief for the Class are consistent with and not antagonistic to the interests of the Class.

41.    The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

a. **Predominance**. Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendants' conduct and its effects, which are common to the Class. Individual issues are minor and may be nothing more than damages calculations pursuant to a formula.

b. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiffs and the Class, while collectively substantial, are relatively small per Class member compared to the burden and expense required to individually litigate their claims. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Both liability and damages can be determined in one class-wide proceeding.

### Count I - Breach of Contract

42. Plaintiffs incorporate all prior allegations as if fully stated herein.

43. Although Defendants are technically separate corporations, they acted as alter egos with respect to the misconduct described herein. Defendants' displayed AAA Freight's carrier license on the trucks leased to Plaintiffs, and AAA Freight negotiated all contractual terms with Plaintiffs and managed the contractual relationship with Plaintiffs. AAA Freight personnel

and agents entered the oral contract with Plaintiffs, promised to pay them a fixed percentage of the load, and communicated all load and pricing information to Plaintiffs. Deki Transport issued Plaintiffs' settlement statements for the loads that Plaintiffs hauled under AAA Freight's carrier license.

44.     Treating Defendants as separate corporate entities would countenance fraud or lead to an unjust result.

45.     Defendants entered into substantively identical lease agreements with Plaintiffs

46.     Defendants agreed to pay Plaintiffs 80% of the gross receipts of the loads they hauled for Defendants.

47.     Plaintiffs and the Class members substantially performed all their obligations under their contracts with the Defendants.

48.     Defendants breached the contracts with Plaintiffs and the Class members by not paying them 80% of the real rate that brokers or shippers paid to Defendants.

49.     Defendants violated the covenant of good faith and fair dealing by under-reporting the price of the loads that Plaintiffs hauled and they paying Plaintiffs 80% of the lower, under-reported amount.

## Count II - Truth in Leasing Act

50.     Plaintiffs incorporate all prior allegations as if fully stated herein.

51.     Defendant AAA Freight is a motor carrier licensed with the U.S. Department of Transportation. Deki Transport is corporation that acted as an alter ego of AAA Freight with regard to the actions described herein. Plaintiffs worked for Defendants as owner-operators for purposes of TILA.

52.     Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

53.     Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). The TILA also requires that leases disclose all "chargebacks" or deductions from an owner-operator's compensation, *id.* § 376.12(h), and that carriers provide copies of the rated freight bill to owner-operators who are paid a percentage of the price of the load. *Id.* § 376.12(g). Finally, the regulations require the carrier to pay interest on the amounts that it holds in escrow. *Id.* § 376.12(k)(5).

54.     Defendants contracted with Plaintiffs without executing written agreements, in violation of the TILA. *Id.* § 376.11(a).

55.     Defendants failed to make the written disclosures required by 49 C.F.R. § 376.12, including the chargebacks and escrow they would deduct from Plaintiffs' pay.

56.     Plaintiffs were damaged by Defendants' failure to execute the written leases required by the TILA because they were not afforded notice of the chargebacks, escrow, or other deductions Defendants would deduct from their settlements and were not provided sufficient information to verify the validity of the chargebacks.

57.     Defendants never paid interest on the amounts it deducted in escrow from Plaintiffs' and the other owner-operator drivers' pay.

58.     Defendants' verbal agreement to pay Plaintiffs 80% of the gross receipts of loads they hauled under AAA Freight's carrier license constituted a lease under the TILA. *Id.* § 376.2(e).

11

59.     Defendants refused to provide Plaintiffs with copies of the rated freight bill or any form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. *Id*. § 376.12(g). The failure to disclose the rated freight bill or equivalent information to Plaintiffs prevented them from contesting the alleged underpayment.

60.     Defendants did not adhere to the terms of the lease agreements because they paid drivers less than the percentage of the load rate they promised to pay Plaintiffs.

61.     Under 49 U.S.C. §14704(a)(2), Defendants are liable to Plaintiffs and the Class for the damages that they suffered on account of Defendants' regulatory violations.

**Prayer for Relief**

Plaintiffs, individually and on behalf of the Class, respectfully pray for the following relief:

 a.  An order certifying the Class as defined above, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

 b.  An order enjoining AAA Freight from contracting with owner operaators without the without written lease agreements required by the TILA;

 c.  An award of all economic, monetary, actual, consequential, and compensatory, damages available under the law;

 d.  An award of restitution and disgorgement;

 e.  An award of all equitable relief requested herein;

 f.  An award of reasonable litigation expenses and attorneys' fees;

 g.  An award of pre- and post-judgment interest, to the extent allowable; and

 h.  Other further relief that the Court deems just and reasonable.

**Jury Demand**

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

Date: October 14, 2022

Respectfully submitted,

/s/ Christopher J. Wilmes

One of the Attorneys for the Plaintiff

Christopher J. Wilmes
cwilmes@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
Hughes Socol Piers Resnick & Dym
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100