IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUD LEE, ARRICK JACKSON, TREMAYNE WILLIAMS, RECON TRANSPORT, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22 CV 5652 |
| v. | ) ) | Judge Robert W. Gettleman |
| AAA FREIGHT, INC., DEKI TRANSPORT, INC., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Maud Lee, Arrick Jackson, Tremayne Williams, and Recon Transport, LLC (collectively, "plaintiffs") bring this five-count first amended class action complaint against defendants AAA Freight, Inc. ("AAA Freight") and Deki Transport, Inc. ("Deki") (collectively, "defendants"). Count I alleges breach of contract against AAA Freight; Count II alleges breach of contract against Deki; Count III alleges violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2), against AAA Freight; Count IV alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, against both defendants; and Count V alleges violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 815 ILCS 115/3, against AAA Freight. On February 3, 2023, defendants moved to dismiss Counts I, III, IV, and V for failure to state a claim (Doc. 25). For the reasons discussed below, the court grants in part and denies in part defendant's motion.

## BACKGROUND

AAA Freight is a federally authorized motor carrier. Plaintiffs are commercial semi-

truck drivers who entered into written lease agreements with Deki, a fleet operator for AAA Freight, to work as "owner-operators." Owner-operators lease their trucks to transport goods for others in the trucking industry, and AAA Freight dispatchers would offer plaintiffs "loads" to transport at a specific price. The crux of plaintiffs' claims is that they reached an oral agreement with AAA Freight prior to executing written agreements with Deki, and defendants engaged in a "classic bait-and-switch scheme" to circumvent statutory lease protections and undercompensate plaintiffs.

According to plaintiffs, defendants engaged in a widespread scheme to mislead them and other drivers about the amount of money that they would receive in exchange for hauling loads under AAA Freight's carrier license. Plaintiffs complain that AAA Freight advertised to the public, and promised plaintiffs, through its recruiters, that it would pay owner-operators 80% of each load that they hauled. According to plaintiffs, defendants' promise was consistent with the dominant model of compensating owner-operators in the trucking industry, which is based on a percentage of the carrier's gross revenue per load.

Plaintiffs allege that they each viewed advertisements stating that AAA Freight was "now hiring lease operators," and that "CDL A Truck Driver Benefits" included "Expedited 78%; Dry Van 80%," which they interpreted to mean that AAA Freight would pay them 78% or 80% of the price of each load that they hauled. Plaintiffs also allege that AAA Freight recruiters informed them on the telephone that they would be paid "80% of the price of each load," in addition to similar representations during orientation and on a billboard.

Before plaintiffs could begin working for AAA Freight, defendants required plaintiffs to sign "independent contractor agreements" with Deki, a company without a motor carrier license. AAA Freight is not a party to the agreements, and the agreements do not delineate anything

about Deki's contractual agreement with AAA Freight.[1]  Plaintiffs complain that AAA Freight

represented that Deki was the "payroll administrator," and would "show up on their paychecks,"

but Deki received a cut of plaintiffs' pay as a middleman instead.  Plaintiffs' contracts with Deki

describe Deki as a "fleet operator."  The contracts state:

> "FLEET OPERATOR provides transportation related services through the use of
> owned and/or leased equipment and currently transports property in both
> intrastate and interstate commerce as a fleet operator for AAA Freight, Inc. . . .
> INDEPENDENT CONTRACTOR shall provide FLEET OPERATOR and
> CARRIER, and any other authorized motor carrier with whom FLEET
> OPERATOR may contract, with the transportation related service and the
> Equipment set forth below or in the appendix."

Plaintiffs allege that defendants consistently paid them less than the promised 80%,

despite indicating on their settlement statements that AAA Freight was paying them 80% of the

gross revenue for each load.  The statements display plaintiffs "gross pay" and list the "rate" as

80.00%.

Plaintiffs further allege that defendants did not give them copies of their contracts with

Deki, but rather provided copies of their truck leases with AAA Equipment LLC (defendants'

affiliated leasing company), which defendants "knew would reinforce their misrepresentation

that Plaintiffs were driving for AAA Freight, rather than Deki."  Other representations, such as

orientation materials, carrier tags, and representations on the trucks themselves, suggested that

plaintiffs were driving for AAA Freight.  Plaintiffs complain that defendants purposely omitted

and concealed the fact that Deki was taking a portion of the revenue that AAA Freight received

for each load, and that plaintiffs were being paid a percentage of Deki's portion of the gross

receipts.  Plaintiffs allege that they would not have agreed to transport loads under AAA

---

[1] The agreements state that: ""Notwithstanding the fact that certain information provided to INDEPENDENT
CONTRACTOR will bear CARRIER'S [AAA Freight's] name, INDEPENDENT CONTRACTOR agrees and
understands that this Agreement is executed solely with FLEET OPERATOR and CARRIER is not a party to this
Agreement."

Freight's carrier license if they knew that they were being paid less than 80% of AAA Freight's revenue for each load, as AAA Freight had promised.

Defendants emphasize that plaintiffs' contracts with Deki contain an integration clause that states in relevant part that:

> "The Agreement (including the Appendices and any addendums) constitute the entire agreement between FLEET OPERATOR and INDEPENDENT CONTRACTOR pertaining to the subject matter contained herein and fully replaces and supersedes all prior and contemporaneous agreements, representations, and understandings. No supplement, modification, or amendment to the Agreement shall be binding unless in writing and signed by both FLEET OPERATOR and INDEPENDENT CONTRACTOR, except as otherwise provided in Section 3 of Appendix A."

Appendix A explains plaintiffs' compensation, which is "the total compensation for everything furnished, provided, or done by [plaintiffs] in connection with [the Agreements], including driver's services." It states that the "agreed upon rate" is "all monies received by FLEET OPERATOR from CARRIER for commodities hauled by INDEPENDENT CONTRACTOR as per the rate offered by CARRIER to, and accepted by, INDEPENDENT CONTRACTOR," reduced by certain expenses and costs that the parties agreed upon, and plaintiffs do not contest.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of

4

a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

Defendants move to dismiss Count I (breach of contract against AAA Freight), Count III (claim under the TILA against AAA Freight), Count IV (claim under the ICFA against both defendants), and Count V (claim under the IWPCA against AAA Freight). The court addresses each count separately.

Defendants argue that the court should dismiss Count I for breach of contract against AAA Freight because any alleged oral agreement between the parties about plaintiffs' compensation was superseded by the comprehensive written independent contractor agreements that plaintiffs signed with Deki. Defendants argue that even if plaintiffs did engage in preliminary discussions with plaintiffs about their compensation, preliminary oral negotiations toward an agreement are distinct from a final contract. See Karris v. U.S. Equities Dev., Inc., 876 N.E.2d 688, 694 (Ill. App. Ct. 2007).

Under Illinois law, an agreement, "when reduced to writing, must be presumed to speak the intention of the parties who signed it." Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 462 (1999) (internal quotations omitted). This presumption is particularly strong when the contract includes an integration clause. See Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc., 212 F.3d 373, 380 (7th Cir. 2000). When interpreting a contract, the court looks first to its text, and if the text is unambiguous on its face, then courts interpret the contract without evaluating extrinsic evidence. See Air Safety, Inc., 236 Ill.2d at 462. If the contractual language is susceptible to more than one meaning, the court may evaluate extrinsic evidence. Id. at 462–63.

In the instant case, the court agrees with defendants that plaintiffs' contracts with Deki

supersede any prior agreements between the fleet operator (Deki) and the independent contractors (plaintiffs) due to the written integration clause,[2] but plaintiffs' breach of contract claim is not based on an earlier agreement between Deki and plaintiffs.  Rather, according to plaintiffs, their breach of contract claim is based on their oral agreements with AAA Freight, which bound AAA Freight prior to the integration clause (which binds Deki and plaintiffs).  In any case, the integration clause does not supersede all prior agreements between plaintiffs and AAA Freight because AAA Freight is not a party to the written agreements.

The court agrees that plaintiffs have plausibly alleged that AAA Freight demonstrated an intent to be bound by its promise of 80% because it, in fact, did pass on 80% of its gross revenue; the issue is that plaintiffs' cut was reduced based on the cost of Deki's services as dispatcher, which defendants characterize as a "middleman."  Plaintiffs have plausibly alleged that AAA Freight agreed on a rate of 80%, based on plaintiffs' alleged oral negotiations with AAA Freight.[3]  These oral agreements are enough to sustain a plausible claim for breach of contract against AAA Freight.  Although the existence of plaintiffs' contracts with Deki can be raised as a defense, the complaint alleges oral contracts that might govern their relationship with AAA Freight regardless of the written contracts.[4]  Accordingly, in the instant case, plaintiffs state a claim for breach of contract against AAA Freight, and the court denies defendants' motion to

---

[2] According to their contracts with Deki, plaintiffs' "total compensation" is the agreed upon rate, which is defined as "all monies" received by Deki from the carrier (AAA Freight) for loads hauled by plaintiffs "as per the rate offered by [AAA Freight] to, and accepted by, [plaintiffs]."  The contracts explain that "total compensation" contemplates "everything . . . in connection with" the agreements, which includes plaintiffs' driving services on behalf of AAA Freight.
[3] The court notes that the TILA requires a written contract between the carrier (AAA Freight) and the owner-operator (plaintiffs), which makes it even more plausible that AAA Freight intended to have a contract with plaintiffs, or otherwise violated TILA requirements.
[4] Defendants argue third party beneficiaries, such as AAA Freight, can enforce integration clauses in certain instances under Illinois law.  See DeGeer v. Gillis, 707 F. Supp. 2d 784, 792–93 (N.D. Ill. 2010).  When a contract is made for the benefit of a third-party beneficiary, the beneficiary may enforce the contract as written.  See Rogers Constr. Corp. v. Greeley & Hansen, 486 N.E.2d 903, 906–07 (1985).

6

dismiss Count I.

Next, defendants argue that the court should dismiss Count III because plaintiffs fail to state a plausible claim under the TILA against AAA Freight. The TILA and its implementing regulations require federally authorized carriers, like AAA Freight, who contract with owner-operators, like plaintiffs, to enter into written leases that meet certain requirements. 49 C.F.R. §§ 376.11(a), 376.12. Plaintiffs allege their oral agreements with AAA Freight constitute lease agreements under the TILA, and the court agrees. Taking the facts in the light most favorable to plaintiffs, plaintiffs state a claim that AAA Freight violated its obligations under the TILA, by failing to convert its verbal lease agreements into writing. Plaintiffs' written agreements with Deki are insufficient to satisfy AAA Freight's obligations under the TILA because the agreements expressly provide that AAA Freight is not a party.[5]

TILA regulations also require carriers to make certain disclosures to owner-operators regarding their compensation and deductions from their pay. 49 C.F.R. § 376.12. The statute requires AAA Freight to provide plaintiffs with the original brokers' rate confirmation sheets for each load when the owner-operators are paid a percentage of the gross revenue of the load. 49 C.F.R. § 376.12(g). Plaintiffs complain that AAA Freight never provided them with original rate confirmation sheets, despite having an agreement to compensate plaintiffs based on percentage. Rather, plaintiffs allege that AAA Freight communicated the price of each load via text message or email using their own dispatch sheets, which allegedly misrepresented and underreported the price. The court agrees that this is a plausible claim under the TILA and denies defendants' motion to dismiss Count III.

The court next evaluates defendants' argument to dismiss Count IV for failure to state a

---

[5] In 49 C.F.R. § 376.12(a), the TILA regulations state that "[t]he [written] lease shall be made between the authorized carrier and the owner of the equipment," which means AAA Freight and plaintiffs.

plausible claim under the ICFA. Defendants argue that plaintiffs are not consumers pursuant to the ICFA, and that plaintiffs have not satisfied the "consumer nexus" test by alleging facts to show that defendants' conduct involved trade practices directed to the market generally, or otherwise implicated consumer protection concerns. See Athay Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 437 (7th Cir. 1996). The court agrees.

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." McIntosh v. Walgreens Boots Alliance, Inc., 135 N.E.3d 73, 80 (2019). To state a claim under the ICFA, a plaintiff must be a consumer or have a consumer nexus. See Cmty. Bank of Trenton v. Schnuck Markets, Inc., 887 F.3d 803, 823 (7th Cir. 2018). The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."[6] 815 ILCS 505/1(e). When a dispute involves two businesses that are not consumers of each other's products or services, the plaintiff can bring a claim under the ICFA if it meets the "consumer nexus test," which requires the challenged conduct to involve trade practices directed to the market generally, or otherwise related to consumer protection issues. 815 ILCS 505/1.

The court agrees with defendants that plaintiffs are not consumers as defined by the ICFA, and have not alleged a plausible consumer nexus. Plaintiffs do not allege that they purchased defendants' services for their personal use; rather, plaintiff allege that they contracted with defendants to exchange services. If plaintiffs could use their status as independent contractors to argue that they are consumers under the ICFA, then every independent contractor

---

[6] The term "person" includes any business entity or association, 815 ILCS 505/1(c), and "merchandise" includes services. 815 ILCS 505/1(b).

would be a consumer of the benefits of their employment. This is implausible. Plaintiffs contracted with defendants as independent contractors; any benefit that plaintiffs received from defendants' services, including dispatching, was contemplated by their business relationship. Further, plaintiffs have not plausibly pled a consumer nexus because the complaint contains no factual allegations to suggest a connection between defendants' dispatching services and consumers or the general public. Count IV is dismissed.

Last, defendants argue that the court should dismiss Count V because plaintiffs have failed to state a claim against AAA Freight under the IWPCA. According to plaintiffs, they are employees of AAA Freight for the purposes of the IWPCA, because AAA Freight exercised discretion and control over the performance of plaintiffs' work within the usual course of its business. The court agrees with plaintiffs that the IWPCA contemplates employment in a broad sense, requiring "a manifestation of mutual assent." Hess v. Kanoski & Assocs., 668 F.3d 446, 452 (7th Cir. 2012). This requirement is "broader than a contract." See Zabinsky v. Gelber Group, Inc., 347 Ill. App. 3d 243, 249 (2004). The court concludes that plaintiffs have plausibly alleged an oral agreement to haul loads based on mutual assent, and it rejects defendants' argument otherwise. Thus, the court denies defendants' motion to dismiss Count V.

## **CONCLUSION**

For the reasons stated above, the court grants in part and denies in part defendants' motion to dismiss (Doc. 25). The court dismisses Count IV, for violations of the ICFA, without prejudice, and denies defendants' motion to dismiss Counts I, III, and V, for breach of contract and violations of the TILA and IWPCA. Defendants are directed to file an answer to Counts I, III, and V by May 8, 2023, and this answer should incorporate defendants' earlier answer to Count II (Doc. 26). The parties are also directed to file a joint status report using this court's

form on or before May 15, 2023.

ENTER:

Robert W. Gettleman
United States District Judge

DATE:   May 2, 2023